AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California



FILED
Feb 21 2025
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY  s/ VeronicaCota  DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )    Case No.   25MJ8122
 )
Stax Up Storage Unit Number 1410 )
2420 Enterprise Blvd )
Calexico, CA 92231 )

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the   Southern   District of   California  , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 924(a)(1)(A) | False Statements During the Purchase of a Firearm |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Julio Villalobos, incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Julio Villalobos*
Applicant's signature

Julio Villalobos, Border Patrol Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
  telephone   *(specify reliable electronic means)*.

Date:   02/21/25
Judge's signature

City and state:   EL CENTRO, CALIFORNIA        HON. LUPE RODRIGUEZ, JR., U.S. MAG. JUDGE
*Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is Stax Up Storage Unit Number 1410 located at 2420 Enterprise Blvd, Calexico, CA 92231 (referred to in the accompanying Affidavit as "**Subject Premises**"). This property is further described as a private storage facility that consists of a light tan colored cinder block exterior, and brown roof shingles. The facility gate and perimeter fence are blue in color.

The storage units located in the interior of the facility consist of red colored cinder blocks and blue, garage-style sliding doors.



# ATTACHMENT B
*Items to be seized*

Seizure is limited to the following items:

1. **Firearms, ammunition, and their parts and/or accessories**, including, but not limited to, revolvers, pistols, shotguns, rifles, assault weapons, machineguns, silencers, shell casings, magazine clips, scopes, and ammunition boxes.

2. **Records related to the purchase, sale, inventory, or transfer of any firearms, ammunition, and firearms parts**, including, but not limited to, photographs; catalogs; ledgers; price lists; customer lists; supplier lists; correspondence; notations; logs; receipts and invoices; pay and owe sheets; storage unit documentation; ATF Form 4473; telephone and address books; letters; maps and written directions to locations; telephone bills; other items reflecting names, addresses and telephone numbers of individuals who requested or obtained, firearms, ammunition, or firearm parts from, or provided firearms, ammunition, or firearms parts to CORTEZ; and any other documents showing the acquisition, disposition, and dominion and control over any firearms, ammunition, or firearms parts.

3. **Items Related to Storage locations**. Items concerning any other storage location, such as storage or rental lockers or garages, where firearms may be stored, including access devices for any such locations, such as keys, passwords, or combinations;

4. **Packaging Materials** – Any mail including, but not limited to, parcels, packages, envelopes, whether CORTEZ is or is not listed as the sender or recipient. Any containers (e.g., boxes, safes, strong boxes, bags, or sacks) or compartments which may contain mail including, but not limited to, parcels, packages, envelopes, whether CORTEZ is and is not listed as the sender or recipient.

5. **Evidence of dominion and control** – Evidence tending to establish dominion and control over the **Subject Premises**, such as documents, or other correspondence, keys, access devices, or personal identification; evidence tending to establish dominion and control over digital devices, such as sticky notes, passwords, labels, or carrying or protective cases; evidence tending to establish dominion and control over the precise location where firearms are stored, such as

gun safes or vaults, carrying cases or crates, and the keys or access devices needed to access the same.

      6.    **Digital Devices Belonging to CORTEZ** – Cellular phones, smart phones (commonly referred to as iPhones or Android phones, or similar devices), and tablets, such as "iPads," or similar Android devices used by and/or belonging to CORTEZ. Search and Seizure of the aforementioned devices is authorized based on the support found in the accompanying affidavit.

    Computers, computer hardware, computer hard drives, discs, "thumb" drives, or any other Digital Devices or media capable of digitally or magnetically storing data, used by and/or belonging to CORTEZ is authorized. However, a separate warrant will be applied for any such search of Digital Services within 14 days of such a Device's seizure (not counting the day of the seizure) or the Device(s) will be returned.

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Julio C. Villalobos, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Border Patrol Agent-Intelligence ("BPA-I") with the Department of Homeland Security/Office of Border Patrol ("DHS/OBP"), Yuma Sector Intelligence Unit. I have been a BPA since November 1, 2010, and currently serve as an Intelligence Agent with Yuma Sector Intelligence Unit. I graduated from the Federal Law Enforcement Training Center ("FLETC") in Glynco, Georgia. I completed both the Criminal Investigator Training Program and Special Agent Basic Training. My duties and responsibilities include conducting criminal investigations of individuals and entities for possible violations of federal laws, particularly those laws found in Title 18, 21, and 26 of the United States Code ("U.S.C.").

2. On January 28, 2011, I completed the BPA Basic Training and basic law enforcement training at the Federal Law Enforcement Training Center in Artesia, New Mexico. I've been permanently assigned to two Border Patrol Stations in two different sectors. These stations include Brian A. Terry Station in Tucson Sector and Yuma Sector Intelligence Unit in Yuma, Arizona. I was a member of the United States Border Patrol Collateral Intelligence Team and Field Intelligence Team ("FIT") in Naco, Arizona, in which I've gained much experience in the operations of various illicit smuggling organizations in various regions of the United States. I have been exposed to casework involving alien, drug, and weapons smuggling cases, along with the legal guidelines associated with this line of work. I have also gathered and interpreted criminal records, interviewed multiple principals and material witnesses, and properly executed the dissemination of information through the proper channels.

3. I have obtained various certifications throughout my career with United States Border Patrol. I am certified on Subconscious Communication for Interview and Interrogation with the Advanced Interview, Interrogation, and Deception ("DDER")

Training in Glynco, Georgia.  Also, I am certified as a Mobile Forensic Data and Recovery by MSAB through the United States Border Patrol.

4. By virtue of my duties as an Intelligence Agent, I have performed various tasks that include, but are not limited to: (a) functioning as a surveillance agent, thus observing and recording movements of persons performing criminal acts, and those suspected of performing criminal acts; and (b) interviewing witnesses, cooperating sources and sources of information relative to smuggling operations and the distribution of monies and assets derived from smuggling activities (to include the laundering of smuggling proceeds).

5. While conducting criminal smuggling investigations, I have personally interviewed persons involved in the smuggling of aliens, and narcotics.  I have consulted with other experienced investigators concerning the practices of smugglers and the best methods of investigating them.  This Affidavit contains facts based both on my personal knowledge, and on information that I have obtained by conferring with other special agents and law enforcement officials involved in this investigation.  The statements contained in this Affidavit are based on information derived from your Affiant's personal knowledge, training and experience; information obtained from the knowledge and observations of other sworn law enforcement officers, either directly or indirectly through their reports or affidavits; surveillance conducted by law enforcement officers; analysis of public records; analysis of social media information; analysis of telephone records; and analysis of financial records.

6. This Affidavit supports an application for a warrant to search and seize evidence from the Stax Up Storage Unit Number 1410, located at 2420 Enterprise Blvd, Calexico, CA 92231 (hereinafter referred to as the "Subject Premises"), more particularly described in Attachment A, incorporated herein.

7. Based on information below, there is probable cause to believe that in the property described in Attachment A, there is evidence of crimes, contraband, fruits of a

crime, or other items illegally possessed; property designed for use, intended for use, or used in committing a crime, specifically, violations of falsifying an address on several ATF Forms 4473 during the purchase of firearms, in violation of 18 U.S.C. § 924(a)(1)(A). The evidence to be searched for and seized is described in Attachment B, incorporated herein.

8.  The following information is based on my own investigation, information provided by other law enforcement officers, either directly or indirectly through their reports or affidavits, surveillance conducted by law enforcement officers, intercepted calls and/or text messages, and information provided by confidential sources. Since this Affidavit is for a limited purpose, I have not included every fact I know about this investigation. I set forth only facts necessary to establish probable cause for the requested warrant. Conversations and discussions below are set forth in substance unless noted, and all dates and times are approximate.

## PROBABLE CAUSE

9.  Jose Pablo CORTEZ ("CORTEZ") is an active-duty Marine, who at least until mid-December was assigned to Marine Corps Air Station Yuma ("MCAS Yuma"). CORTEZ has been indicted for violations of Title 18, United States Code ("U.S.C."), Section 924(a)(1)(A) in the District of Arizona, Case No. CR-24-2062-PHX-MTL (ASB). It is also believed that in a separate investigation, unrelated to the charges in Indictment CR-24-2062-PHX-MTL, CORTEZ used a black Jeep Gladiator bearing Arizona license plate 9CA52T (the "black Jeep") to smuggle goods from the United States to Mexico, in violation of 18 U.S.C. § 554.

10. Between March 2024 and December 2024, CORTEZ purchased several firearms. Federal law enforcement compared known firearm purchases to CORTEZ's Port of Entry ("POE") border crossing history.

11. On March 18, 2024, CORTEZ purchased a Glock 19 pistol and a Pioneer Arms AK47 rifle from Jones & Jones, which is a Federal Firearms Licensed ("FFL") located at 17490 S. Avenue E, Somerton, AZ 85350. On this same date, CORTEZ

3

purchased a Pioneer Arms Poland Sporter rifle and six (6) thirty-round magazines for AK47 rifles from Sprague's Sports, LLC ("Sprague's"), an FFL located at 345 W. 32nd Street, Yuma, AZ 85364. The receipts from Sprague's showed that the Pioneer Arms Poland Sporter rifle was purchased at 3:42 p.m., and that the six (6) AK47 magazines were purchased at 4:35 p.m. CORTEZ paid cash for both transactions at Sprague's. On this date, CORTEZ crossed inbound through the Calexico East POE at approximately 7:22 a.m. in a Toyota Corolla bearing California license plate 9HUX955. Surveillance video from both Jones & Jones and Sprague's showed CORTEZ arriving and departing from the stores in a gray Jeep. At this time, CORTEZ had a gray Jeep (not the black Jeep) registered in his name bearing California plate 8HYP461. POE data showed that the gray Jeep went outbound to Mexico through the Calexico East POE on this date at approximately 6:33 p.m., and then the gray Jeep returned to the United States through the Calexico East POE at approximately 8:38 p.m. Occupant data from the POE crossing history showed that CORTEZ was the driver and sole occupant of the gray Jeep when it returned to the United States on March 18, 2024, at 8:38 p.m.

12. On March 28, 2024, CORTEZ purchased a Glock 19 pistol and a Century Arms VSKA Thunder Rach rifle from Jones & Jones. On the same date, CORTEZ also purchased two (2) Phoenix Arms HP5A rifles from Firearms Unknown, an FFL located at 801 West 32nd Street, Yuma, AZ 85364. POE data showed that CORTEZ crossed inbound to the United States from Mexico at the Calexico East POE on this same date at approximately 12:35 p.m. in the gray Jeep. The gray Jeep went outbound to Mexico through the Calexico West POE on this same date at approximately 6:27 p.m.

13. On April 2, 2024, CORTEZ purchased a Glock 19 pistol from Firearms Unknown. POE data showed that CORTEZ crossed inbound to the United States twice on this date: First in the pedestrian lanes at approximately 12:46 p.m., and again at approximately 1:21 p.m. in a vehicle bearing Mexican license plate 47BCW6.

14.     On April 25, 2024, CORTEZ purchased an FNH PS90 rifle from Sprague's Sports and paid cash. Surveillance video from Sprague's on this date showed CORTEZ arrived in the gray Jeep. CORTEZ did not cross inbound through the POE on this date; however, on April 26, 2024, CORTEZ crossed inbound from Mexico through the Calexico East POE in the gray Jeep bearing Arizona license plate 9CA52T. This fact indicates that at some point after the purchase of the firearm from Sprague's, CORTEZ went to Mexico. Registration data for the gray Jeep showed that it is the same Vehicle Identification Number as the Jeep bearing California license plate 8HYP461. Subsequently, CORTEZ sold the gray Jeep and transferred Arizona License Plate 9CA52T to the black Jeep.

15.     On April 26, 2024, CORTEZ purchased a Bersa Thunder pistol from Firearms Unknown. POE data showed that CORTEZ crossed inbound to the United States from Mexico through the Calexico East POE in the black Jeep at approximately 1:35 p.m. On this same date, at approximately 7:49 p.m., the black Jeep went outbound to Mexico through the Calexico West POE. A video dated April 26, 2024, was extracted from CORTEZ' phone that features a man inside a storage facility holding a black military style rifle. The GPS coordinates for this picture are 32.695500, -115.505400, which according to Google Maps is the same location as the "Subject Premises".

//
//
//
//
//
//
//
//
//
//



(Screenshot from April 26, 2024, video of CORTEZ holding rifle at "Subject Premises")

16.  On June 20, 2024, at approximately 2:58 p.m., Customs and Border Protection Officers working an operation in the city of Yuma, Arizona, observed the black Jeep arrive at Firearms Unknown.  Border crossing data from the Calexico East POE showed the black Jeep had recently crossed into the United States from Mexico through the POE that same day at approximately 12:43 p.m.  Border crossing data showed that the black Jeep then returned to Mexico through the Calexico East POE at approximately 8:15 p.m.  Your Affiant knows through training and experience, that the short trip into the United States in conjunction with a stop at a firearms store is indicative of potential outbound weapons smuggling.

17.  Yuma Sector Anti-Smuggling Unit ("YUM-ASU") began an investigation of the black Jeep and identified the owner as CORTEZ.  Investigations revealed that CORTEZ

6

frequently crosses through the Calexico East POE, and that he lists an address in Yuma, Arizona on his driver's license and the registration for the black Jeep.

18.  On June 27, 2024, CORTEZ purchased seventeen (17) boxes of .50 caliber ammunition from Sprague's. The receipt showed that this transaction occurred at 3:02 p.m., and that CORTEZ paid cash. POE data showed that CORTEZ crossed inbound from Mexico through the Calexico POE in the black Jeep at approximately 1:08 p.m. The black Jeep went outbound through the Calexico East POE at approximately 8:52 p.m. and GPS data also showed that CORTEZ made a stop at the "Subject Premises".

19.  On July 9, 2024, YUM-ASU observed the black Jeep on Interstate 8 ("I-8") travelling towards Yuma, Arizona. POE data showed that CORTEZ was the driver and sole occupant of the black Jeep when it crossed into the United States from Mexico on this same date at approximately 7:22 a.m. YUM-ASU initiated surveillance on the black Jeep and observed it enter MCAS Yuma at approximately 8:34 a.m. Naval Criminal Investigative Services Resident Agency Yuma ("NCISRA") was contacted and provided information on CORTEZ, and NCISRA confirmed that at that time, CORTEZ was an active-duty Marine. This is relevant since active-duty service members need to receive permission and be debriefed by NCIS every time they go into another country. NCIS confirmed CORTEZ had not requested permission nor been debriefed by NCIS before leaving the country.

20.  On July 11, 2024, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") was contacted to assist YUM-ASU in determining if CORTEZ had any recent firearms purchases. ATF found CORTEZ purchased firearms between March 2024 and October 2024. In addition to the firearms purchases, CORTEZ also purchased seventeen (17) boxes of .50 caliber ammunition.

21.  On July 31, 2024, the Honorable Magistrate Judge James F. Metcalf, in the District of Arizona, authorized a warrant to track CORTEZ's vehicle (the black Jeep). See 24-2063MB.

22. On August 12, 2024, the Honorable Magistrate Judge James F. Metcalf, in the District of Arizona, authorized a second warrant to track CORTEZ's vehicle (the black Jeep). See 24-2104MB.

23. During the time that CORTEZ was monitored by the tracker warrant, it was learned that he lived in Mexico, and was crossing back and forth between the United States and Mexico daily. During the time that CORTEZ was monitored with the tracker, he made one stop at the "Subject Premises" on August 20, 2024.

24. On October 31, 2024, CORTEZ purchased a Glock 19X from Firearm's Unknown.

25. On November 27, 2024, CORTEZ purchased a Glock 19X from Jones & Jones. GPS data demonstrated that CORTEZ went to the "Subject Premises" after leaving Jones & Jones on November 27, 2024.

26. On December 13, 2024, CORTEZ purchased a Glock 19 at Jones & Jones (receipt shows a date of December 12, 2024).

27. CORTEZ frequently stopped at the "Subject Premises" while traveling to Calexico, CA after leaving work in Yuma, AZ and after purchasing a firearm. According to the information extracted from CORTEZ' phone, he stopped at the "Subject Premises" on April 25, 2024, and on November 24, 2024, after purchasing firearms.

28. On December 15, 2024, NCIS arrested CORTEZ on numerous military Article 92 charges for undisclosed foreign travel. CORTEZ was transported to the brig in Miramar, California awaiting Pretrial Confinement. During his hearing, the judicial officer detained CORTEZ.

29. On December 17, 2024, a grand jury indicted CORTEZ for nine counts of Making a False Statement During the Purchase of a Firearm, in violation of Title 18, United States Code, Section 924(a)(1)(A), based on:

    a. CORTEZ was indicted for falsifying his address on several ATF Forms 4473 during the purchase of firearms from FFLs.

      b.    To purchase a firearm(s) from an FFL, the purchaser must complete an ATF Form 4473. Purchasers must complete the ATF Form 4473 truthfully.

      c.    Between March 2024 and October 2024, Cortez completed nine ATF Forms 4473. On each ATF Form 4473 that CORTEZ completed and signed, CORTEZ listed his address of residence as: Barracks 724, Room 431, Yuma, AZ 85369.

      d.    NCISRA was contacted and confirmed that CORTEZ was not assigned to Barracks 724, Room 431, Yuma, AZ 85365, or anywhere at MCAS Yuma, and had not lived on base in several years.

      e.    Additionally, NCISRA advised that if a Marine has a personally owned firearm on base, the firearm is required to be registered with MCAS Yuma. NCISRA confirmed that CORTEZ did not have any firearms registered to him on base.

      f.    CORTEZ has POE crossings that occur within a short period of time from the known firearm purchases.

30.    On December 13, 2024, NCIS obtained a warrant to search CORTEZ's phone for geolocation data, meta data, and files that corroborate violations of military Article 92 charges. As previously mentioned, the location data on CORTEZ's phone revealed he traveled to FFLs, the "Subject Premises" in California and into Mexico. The information extracted from CORTEZ' phone provided the locations and dates that CORTEZ travelled to the "Subject Premises."

31.    Since the time CORTEZ has been detained, your Affiant has had the opportunity to review recorded calls CORTEZ has had while in custody. Your Affiant has heard conversations regarding the "Subject Premises." CORTEZ instructed his wife Yadira MURILLO to travel to the "Subject Premises" to retrieve a few items. CORTEZ did not directly mention in these conversations to retrieve any weapons, but he did state that he

knew the conversations are recorded and monitored so he had to be careful what he talked about during the phone calls.

32. Your Affiant knows that the "Subject Premises" is rented in the name of Yadira MURILLO, who is CORTEZ' wife. This information was verified after speaking with a representative at the rental office of Stax Up.

33. Your Affiant believes there is probable cause that CORTEZ has been using this storage facility to store firearms purchased in Arizona.

34. Based upon the facts contained in this Affidavit, your Affiant submits there is probable cause to believe that the items listed in Attachment B will be found at the Subject Premises listed in Attachment A.

35. Based on my training, education, and experience, and discussions with other trained law enforcement personnel, along with information provided by sources of information and confidential sources, your Affiant knows the following:

    a. It is common for individuals who are involved in the illegal acquisition and/or trafficking of firearms to keep those and other firearms and documents related to the acquisition and disposition of those firearms at their residence, business, storage facility, and in their vehicles for an indefinite period of time. Even after firearms are sold, documentary records and ledgers are often maintained for long periods of time to memorialize past transactions, record the status of the accounts receivable and accounts payable, and maintain the names, telephone numbers, and contact information for suppliers, customers, and co-conspirators.

    b. It is common for individuals who are involved in the illegal acquisition and/or trafficking of firearms to store those firearms at places other than their residences, such as in their vehicles or storage facilities. However, those persons often maintain receipts or other documentation related to those firearms and storage locations in their residences, businesses, and vehicles.

c. It is common for individuals who are involved in the illegal acquisition and/or trafficking of firearms to conduct those transactions in cash and store the United States Currency (USD) at their residence, storage, or vehicle.

d. It is common for individuals who are involved in the illegal acquisition and/or trafficking of firearms to possess items relating to those firearms, including associated magazines, photographs of firearms and receipts for the purchase of these items at their residence and at places other than their residence, such as their place of business, their vehicles, storage lockers, and sheds. These same individuals also carry on their person, inside clothing pockets or a wallet, receipts for the purchase and repair of those items.

e. It is common for individuals who are involved in the illegal acquisition and/or trafficking of firearms, to carry those firearms on their person, particularly handguns and rifles equipped with a folding stock or telescoping stock, which due to their inherent size, can be easily carried and concealed on their bodies.

f. It is common for individuals who are involved in the illegal acquisition and/or trafficking of firearms to go through surreptitious means to acquire, maintain and possess such firearms without complying with state and federal laws. These same individuals often maintain the names, addresses, and telephone numbers of individuals from whom they illegally acquire or transfer firearms to, at their residences, businesses, on their cellular devices, on their person in a wallet or pocket, or in their vehicles. Your Affiant knows that such records are commonly maintained for long periods of time and therefore are likely to be found at the Subject Premises.

g. It is common for individuals who are involved in the illegal acquisition and/or trafficking of firearms to change their address on state-issued documents (i.e.: Driver License, State Identification Card, Vehicle Registration,

etc.), often days prior to a firearm purchase, in an effort to circumvent suspicion of an unlawful firearm acquisition.

  h. It is common for individuals who are involved in the illegal acquisition and/or trafficking of firearms to obtain firearms from associates who are not prohibited from purchasing or possessing firearms. These associates are known as "straw purchasers." The "straw purchaser" buys a firearm in his/her own name and subsequently transfers the firearm to the prohibited person. Firearms recovered by law enforcement with a Time-to-Crime under 365 days are typically a strong indicator of "straw purchases" and/or firearms trafficking tendencies.

  i. It is common for individuals who are involved in the illegal acquisition and/or trafficking of firearms to obtain firearms from states known to law enforcement agents as "source states" such as Arizona, Nevada, and Texas. "Source states" typically have less restrictive firearms laws than other states that allow gun buyers to purchase multiple handguns in a single transaction in addition to assault style rifles. Typically, these individuals are "straw purchasers" who obtain several firearms from a "source state," which are then transported to the states or countries where it is more difficult or illegal to obtain certain firearms, such as California or Mexico.

  j. It is common for individuals involved in firearms trafficking to use cellular telephones, computers, tablets, and personal digital assistants (collectively "Digital Devices") and maintain these items on their person and/or in their residences. Individuals involved in firearms trafficking use these Digital Devices to increase their mobility, coordinate illicit activities, and to provide the traffickers with instant access to phone calls and voice messages. Digital Devices enable firearm dealers to maintain contact with associates, suppliers, and customers. Individuals often utilize Digital Devices with photograph and video capabilities to take photographs and videos of other members of criminal organizations, firearms,

criminal proceeds, and assets purchased with criminal proceeds. Therefore, evidence related to the illegal acquisition and/or trafficking of firearms is likely to be found on electronic storage media found at the Subject Premises, as further described below.

      k.    It is common for individuals involved in firearms trafficking to obliterate serial numbers and other manufacturer's markings from firearms to thwart law enforcement attempts to trace the origin and identity of firearms.

### CONCLUSION

36.    Based on all of the above, my experience and training, and consultation with other law enforcement officers, I believe that the items set forth in Attachment B are fruits, instrumentalities or evidence of the criminal offenses set forth above and will be found at the Subject Premises listed in Attachment A.

Respectfully submitted,

*Julio Villalobos*
JULIO VILLALOBOS, BPA-I
United States Border Patrol

Subscribed and sworn to telephonically before me on this 21st day of February, 2025.

                                             02:25 p.m.
HONORABLE LUPE RODRIGUEZ, JR.
U.S. MAGISTRATE JUDGE

## ATTACHMENT A

*Property to be searched*

The property to be searched is Stax Up Storage Unit Number 1410 located at 2420 Enterprise Blvd, Calexico, CA 92231 (referred to in the accompanying Affidavit as "**Subject Premises**"). This property is further described as a private storage facility that consists of a light tan colored cinder block exterior, and brown roof shingles. The facility gate and perimeter fence are blue in color.

The storage units located in the interior of the facility consist of red colored cinder blocks and blue, garage-style sliding doors.



# ATTACHMENT B
*Items to be seized*

Seizure is limited to the following items:

1. **Firearms, ammunition, and their parts and/or accessories**, including, but not limited to, revolvers, pistols, shotguns, rifles, assault weapons, machineguns, silencers, shell casings, magazine clips, scopes, and ammunition boxes.

2. **Records related to the purchase, sale, inventory, or transfer of any firearms, ammunition, and firearms parts**, including, but not limited to, photographs; catalogs; ledgers; price lists; customer lists; supplier lists; correspondence; notations; logs; receipts and invoices; pay and owe sheets; storage unit documentation; ATF Form 4473; telephone and address books; letters; maps and written directions to locations; telephone bills; other items reflecting names, addresses and telephone numbers of individuals who requested or obtained, firearms, ammunition, or firearm parts from, or provided firearms, ammunition, or firearms parts to CORTEZ; and any other documents showing the acquisition, disposition, and dominion and control over any firearms, ammunition, or firearms parts.

3. **Items Related to Storage locations**. Items concerning any other storage location, such as storage or rental lockers or garages, where firearms may be stored, including access devices for any such locations, such as keys, passwords, or combinations;

4. **Packaging Materials** – Any mail including, but not limited to, parcels, packages, envelopes, whether CORTEZ is or is not listed as the sender or recipient. Any containers (e.g., boxes, safes, strong boxes, bags, or sacks) or compartments which may contain mail including, but not limited to, parcels, packages, envelopes, whether CORTEZ is and is not listed as the sender or recipient.

5. **Evidence of dominion and control** – Evidence tending to establish dominion and control over the **Subject Premises**, such as documents, or other correspondence, keys, access devices, or personal identification; evidence tending to establish dominion and control over digital devices, such as sticky notes, passwords, labels, or carrying or protective cases; evidence tending to establish dominion and control over the precise location where firearms are stored, such as

gun safes or vaults, carrying cases or crates, and the keys or access devices needed to access the same.

  6. **Digital Devices Belonging to CORTEZ –** Cellular phones, smart phones (commonly referred to as iPhones or Android phones, or similar devices), and tablets, such as "iPads," or similar Android devices used by and/or belonging to CORTEZ. Search and Seizure of the aforementioned devices is authorized based on the support found in the accompanying affidavit.

Computers, computer hardware, computer hard drives, discs, "thumb" drives, or any other Digital Devices or media capable of digitally or magnetically storing data, used by and/or belonging to CORTEZ is authorized. However, a separate warrant will be applied for any such search of Digital Services within 14 days of such a Device's seizure (not counting the day of the seizure) or the Device(s) will be returned.